JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES McCARVER and DIANNA McCARVER,<br><br>Plaintiffs,<br><br>v.<br><br>SYNCHRONY BANK,<br><br>Defendant. | Case No.: CV 19-00724-CJC (PLAx)<br><br><br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION [Dkt. 16]** |

**I. INTRODUCTION**

Plaintiffs James and Dianna McCarver bring this Telephone Consumer Protection Act ("TCPA") action against Synchrony Bank ("Synchrony"). (Dkt. 1 [Complaint,

hereinafter "Compl."].)  Before the Court is Synchrony's unopposed motion to compel arbitration.  (Dkt. 16.)  For the following reasons, that motion is **GRANTED**.[1]

## II. BACKGROUND

### A. Plaintiffs' Allegations

This dispute arises from Synchrony's alleged violations of the TCPA.  Around January 2015, Synchrony allegedly began contacting the McCarvers on their cell phones in order to collect an outstanding credit card debt.  (Compl. ¶ 12.)  On January 5, 2016, the McCarvers sent Synchrony written notice informing it that they did not consent to the debt-collection calls.  (*Id.* ¶ 11.)  The calls did not stop, however.  (*Id.*)  Plaintiffs allege that they received at least 50 calls from Synchrony after sending in their written notice.  (*Id.* ¶ 13.)  Synchrony allegedly used an "automatic telephone dialing system" to place these calls.  (*Id.* ¶ 14.)  The McCarvers filed suit against Synchrony on April 19, 2019, asserting two causes of action against Synchrony which allege that it committed both negligent and willful violations of the TCPA.  (*See generally id.*)

### B. Arbitration Agreements

Synchrony is a federal savings association that, among other things, issues credit cards to consumers and manages the accompanying accounts.  (Dkt. 16-1 [Declaration of Martha Koehler, hereinafter "Koehler Decl."] ¶ 3.)  Synchrony has a number of credit card programs through which it issues branded credit cards bearing the logos of other companies.  (*Id.* ¶ 7.)  Relevant to this case are Synchrony's credit card programs with

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for December 9, 2019, at 1:30 p.m. is hereby vacated and off calendar.

CareCredit, PayPal, Amazon, and Toys R Us.  Synchrony's records indicate that Dianna McCarver is the accountholder for a PayPal and an Amazon credit card and that James McCarver is listed as an account holder for PayPal, Amazon, and Toys R Us cards.  (*Id.*)  James and Dianna are listed as joint accountholders for a CreditCare card.  (*Id.*)

A similar process was followed each time the McCarvers applied for and activated one of the Synchrony-issued credit cards listed above.  First, they applied for the card by submitting an application to Synchrony.  (*Id.* ¶ 9.)  Synchrony approved the application and then sent the card and a copy of a credit agreement to the address listed in the application.  (*Id.* ¶ 10.)  Each agreement contained the following term: "[t]his is an Agreement between you and GE Capital Retail Bank [now Synchrony Bank] for your credit card account.  By opening or using your account, you agree to the terms of the entire agreement."  (*See* Koehler Decl. Ex. 2.)  Each agreement also contains an arbitration provision which provides:

> **PLEASE READ THIS SECTION CAREFULLY.  IF YOU DO NOT REJECT IT, THIS SECTION WILL APPLY TO YOUR ACCOUNT, AND MOST DISPUTES BETWEEN YOU AND USE WILL BE SUBJECT TO INDIVIDUAL ARBITRATION . . .**
>
> <u>**What claims are subject to arbitration.**</u>  If either you or we make a demand for arbitration, you and we must arbitrate any dispute or claim between you or any other user of your account, and us . . . if it relates to your account, except as noted below.
>
> We will not require you to arbitrate: (1) any individual case in small claims court or your state's equivalent count, so long as it remains an individual case in that court; or (2) a case we file to collect money you owe us. . .
>
> Notwithstanding any other language in this section, only a court, not an arbitrator, will decide disputes about the validity, enforceability, coverage or scope of this section . . .

> **Governing Law for Arbitration.** This Arbitration section of your Agreement is governed by the Federal Arbitration Act (FAA). Utah law shall apply to the extent state law is relevant under the FAA. The arbitrator's decision will be final and binding, except for any appeal right under the FAA. Any court with jurisdiction may enter judgment upon the arbitrator's award.

(Koehler Decl. Ex. 4 at 30.)[2] Synchrony moves to compel Plaintiffs' claims to arbitration based on the above provision.

## III.  ANALYSIS

### A.  Arbitrability of Claims

Under the Federal Arbitration Act ("FAA"), a "written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of the contract." 9 U.S.C. § 2. The FAA is "a congressional declaration of a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). In light of this, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* at 24–25. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). This Court's role is limited to determining "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Kilgore v.*

---

[2] This specific language comes from the PayPal agreement, but the CreditCare, Amazon, and Toys R Us agreements contain substantively identical language. (*See* Koehler Decl. Exs. 8, 10, 12.)

*KeyBank, N.A.*, 718 F.3d 1052, 1058 (9th Cir. 2013) (en banc) (citation omitted); *see also* 9 U.S.C. § 2.

### 1. Valid Agreement to Arbitrate

The Court must first determine whether there is a valid agreement to arbitrate. *Kilgore*, 718 F.3d at 1058. "To evaluate the validity of an arbitration agreement, federal courts should apply ordinary state-law principles that govern the formation of contracts." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (internal quotation marks and citation omitted). Synchrony argues that the arbitration provisions within contained Plaintiffs' credit card agreements are valid agreements to arbitrate. The Court agrees.

The arbitration provisions contained in Plaintiffs' agreements provide that "Utah law shall apply to the extent state law is relevant under the FAA." (Koehler Decl. Ex. 4.) Under Utah law, "a credit agreement is binding and enforceable without a signature by the party to be charged if: (i) the debtor is provided with a written copy of the terms of the agreement; (ii) the agreement provides that any use of the credit offered shall constitute acceptance of those terms; and (iii) after the debtor receives the agreement, the debtor . . . uses the credit card." Utah Code § 25–5–4(2)(e). Here, Plaintiffs were provided with the written copies of the agreement, each agreement states that use of the card constitutes acceptance, and Plaintiffs used the cards in question. (*See* Koehler Decl. ¶¶ 10–14.) Accordingly, under Utah law, valid agreements to arbitrate exist between the parties.

//
//
//

### 2. Agreement Encompasses Dispute at Issue

The Court next must determine whether the arbitration agreement encompasses the dispute at issue. *Kilgore*, 718 F.3d at 1058. This is a question of whether the dispute at hand "falls within the scope of the parties' agreement to arbitrate." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000). The FAA requires courts to "examine a complaint with care to assess whether any individual claim must be arbitrated." *KPMG, LLP v. Cocchi*, 565 U.S. 18, 19, 22 (2011) (per curiam). In this lawsuit, Plaintiffs assert two claims under the TCPA. Both claims allege that Synchrony called their cell phones on multiple occasions using an "automatic telephone dialing system" while attempting to collect the outstanding debt on Plaintiffs' credit card accounts. (Compl. ¶¶ 18–24.) This dispute "falls within the scope of the parties' agreement to arbitrate." *Chiron*, 207 F.3d at 1131. The credit card agreements provide that, upon the demand of either party, "you and we must arbitrate any dispute or claim between you or any other user of your account, and us . . . if it relates to your account." (Koehler Decl. Ex. 4 at 30.) Plaintiffs' TCPA claims relate to their account because they arise from Synchrony's efforts to collect debts that Plaintiffs incurred using their accounts. Accordingly, Plaintiffs' claims are subject to arbitration, and Synchrony's motion to compel arbitration is **GRANTED**.

### B. Stay of Case

Synchrony asks the Court to stay litigation, pending resolution of arbitration. The FAA directs the court to stay all proceedings pending completion of arbitration. *See* 9 U.S.C. § 3. "[T]he power to stay proceedings is incidental to the power inherent in every court to control disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Since the Court has determined that Plaintiffs' claims are arbitrable, it will stay the case,

pending resolution of arbitration. The parties are directed to inform the Court once the arbitration has reached its conclusion.

**IV. CONCLUSION**

For the foregoing reasons, Synchrony's motion to compel arbitration and stay the proceedings is **GRANTED**. The case is **STAYED**, pending resolution of arbitration.

DATED: November 26, 2019

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE